UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CASSANDRA YENCHIK and BRIAN ELLIOTT, her husband, <br><br> Plaintiffs, <br><br> v. <br><br> GTC LOGISTICS, INC. and SABUHI HASANLI, <br><br> Defendants. | CIVIL ACTION NO. 3:23-CV-00194 <br><br> (MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court is a motion for leave to file an amended answer (Doc. 26) and a motion for summary judgment (Doc. 27), both filed by Defendants GTC Logistics, Inc. ("GTC Logistics") and Sabuhi Hasanli ("Hasanli") (collectively, "Defendants"). This case arises from personal injury claims by Plaintiffs Cassandra Yenchick ("Yenchick") and Brian Elliot ("Elliot") (collectively, "Plaintiffs") who were involved in a car accident with Hasanli on March 5, 2022. (Doc. 1). For the following reasons, Defendants' motion for leave to file an amended answer (Doc. 26) will be **GRANTED** and Defendants' motion for summary judgment will be **DENIED**. (Doc. 27).

**I.    PROCEDURAL AND FACTUAL BACKGROUND**[1]

At all times relevant to the instant action, Hasanli was employed by GTC Logistics or contracted with GTC Logistics to operated tractor trailers and perform services for GTC

---

[1] The relevant factual summary is taken from the parties' statement of facts, responses thereto, and supporting exhibits. (Doc. 1; Doc. 26; Doc. 26-2; Doc. 27; Doc. 27-2; Doc. 27-
*(footnote continued on next page)*

Logistics. (Doc. 1, ¶ 14; Doc. 27-8, at 4). On March 5, 2022 at around 4:00pm on I-81 in Ashley Borough, Luzerne County, Pennsylvania, Hasanli and Yenchick were involved in an automobile accident. (Doc. 1, ¶¶ 31-34; Doc. 27-2, ¶ 17). Just prior to the accident, Hasanli was operating his truck in the right lane on I-81. (Doc. 1, ¶¶ 34-35; Doc. 27-2, ¶ 22). Yenchick was driving a white Volkswagen behind two other vehicles in the onramp lane. (Doc. 1, ¶¶ 33-34; Doc. 27-2, ¶ 25; Doc. 27-10). Yenchick merged from the onramp into the right lane, where Hasanli was driving. (Doc. 1, ¶¶ 34-35; Doc. 27-2, ¶ 26; Doc. 27-10). Yenchick braked after merging into the right lane. (Doc. 1, ¶¶ 38-43; Doc. 27-2, ¶¶ 27-28; Doc. 27-10; Doc. 37-1). As she braked, Yenchick reduced her speed to 25 miles per hour in a zone where the speed limit was 55 miles per hour. (Doc. 27-10; Doc. 37-1, at 18). Hasanli braked but was not able to stop and struck Yenchick's vehicle. (Doc. 1, ¶ 34; Doc. 27-8, at 10; Doc. 27-10; Doc. 37-1, at 23). Yenchick contends that because of the accident, she suffered significant injuries. (Doc. 1, ¶ 39).

On February 6, 2023, Plaintiffs filed a complaint asserting tort claims and a derivative loss of consortium claim against Hasanli and GTC Logistics based upon alleged negligence of Hasanli while driving and alleged negligence by GTC Logistics in hiring and entrusting Hasanli to operate the truck. (Doc. 1). On July 3, 2024, Defendants filed a motion for summary judgment as well as a motion for leave to file an amended complaint and supporting

---

3; Doc. 27-4; Doc. 27-5; Doc. 27-6; Doc. 27-7; Doc. 27-8; Doc. 27-9; Doc. 27-10; Doc. 27-11; Doc. 27-12; Doc. 27-13; Doc. 27-14; Doc. 27-15; Doc. 27-16; Doc. 31; Doc. 36; Doc. 36; Doc. 37; Doc. 37-1; Doc. 37-2; Doc. 37-3). Plaintiffs are reminded to adhere to the requirements for responses to statements of facts as laid out by Local Rule 56.1.

briefs for each as attachments. (Doc. 26; Doc. 27). On July 26, 2024, Plaintiffs filed a brief in opposition to Defendants' motion for summary judgment. (Doc. 35). On August 9, 2024, Defendants filed a reply brief. (Doc. 37). Accordingly, the matter is ripe for disposition.

II.     **MOTION FOR SUMMARY JUDGMENT STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson, 477 U.S. at 249*.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

**III.  DISCUSSION**

    A.  MOTION FOR LEAVE TO FILE AMENDED ANSWER

At the outset, the Court considers Defendants' motion to file an amended answer in this action. (Doc. 26). Defendants move to file an amended answer to specify the ways in which they argue that Yenchick contributed to her injuries through negligence. (Doc. 26-2; Doc. 26-7, at 12). Defendants contend that the additional defenses they seek to include are not new or surprising, but instead describe Plaintiffs' conduct with more specificity. (Doc. 26-2, at 3). Plaintiffs have not filed a brief in opposition to the motion to amend.

4

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within 21 days after serving it, or within the earlier of 21 days after service of a responsive pleading or a Rule 12(b)(6) motion.9 "In all other cases," amendment may only be achieved through the opposing party's written consent or the Court's leave "when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, courts should grant leave to file amended pleadings freely. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("Leave to amend 'shall be freely given when justice so requires.'") (quoting Fed. R. Civ. P. 15). However, "where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment.'" *Handle v. Brennan*, No. CV 15-8071 (BRM), 2017 WL 3473999, at *3 (D.N.J. Aug. 11, 2017), *aff'd sub nom. Handle v. Postmaster Gen., United States Postal Serv.*, 806 F. App'x 95 (3d Cir. 2020) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Third Circuit has emphasized that "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). The non-moving party must establish prejudice by showing that "the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction." *Handle*, 2017 WL 3473999, at *4 (citing *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004)).

Here, Plaintiffs failed to file a brief in opposition to Defendants' motion for leave to file an amended answer; as such, Plaintiffs have not made the requisite showing of prejudice.

5

Regardless, this Court will consider the presence of undue delay, bad faith, prejudice, or futility in the interest of a thorough and complete analysis. *See Foman*, 371 U.S. at 182.

Defendants' original answer included the following statement on several occasions:

"[Yenchick] may have been negligent, careless and/or reckless in the operation of their motor vehicle thereby causing and/or contribution to the happening of the accident."

(Doc. 12, ¶¶ 34, 86-88, 91).

Defendants also included the following affirmative defenses:

4. Defendants did not act with carelessness, negligence, gross negligence, recklessness, unlawfulness or with outrageous conduct at any time as alleged in Plaintiff's Complaint.

5. Some or all of the damages claimed by Plaintiff are not recoverable under applicable law.

6. Plaintiff is not entitled to recover punitive damages as Defendants at no time acted with the required conduct to warrant such damages.

7. Defendants believe, and therefore aver, that Plaintiff's alleged injuries, if any, were directly and proximately caused by Plaintiff's contributory and/or comparative negligence and therefore their claims are barred and/or limited by the applicable provisions of the Pennsylvania Comparative Negligence Act, 42 Pa.C.S.A. § 7102.

8. Plaintiff is barred from recovery by the doctrine of accord and satisfaction.

9. Plaintiff is barred from recovery by the doctrine of waiver, laches and/or estoppel.

10. Plaintiff failed to mitigate any damages that they allegedly sustained.

11. Defendants did not breach any duty owed to Plaintiff.

12. The acts and/or admissions of other individuals or entities over whom Defendants had no control or right to control constituted an intervening, superseding cause of the damages alleged have been sustained by Plaintiff.

13. If Plaintiff seeks compensatory damages for expenses related to medical tests, medications, and/or treatment, such damages are reduced by the holding

and *Moorehead vs. Crozer Chester Medical Center*, 557 Pa. 630 (1998) to the amount actually due and payable.

14. Plaintiff has not been harmed by any actions or inactions by Defendants.

15. Any negligence of Defendant, if any, was not the proximate cause of Plaintiff's alleged damages.

16. Plaintiff is barred by recovery by the provision of the PMVFRL including the election of the limit tort threshold.

17. Plaintiff is barred from recovery by the Worker's Compensation Act.

18. Defendants followed all laws and regulations for the operations of a tractor trailer including all provisions and requirements of the Interstate Commerce Commission, United States Department of Transportation, Federal Motor Carrier Safety Regulations, Pennsylvania Motor Vehicle Code and all other applications codes and regulations.

19. Plaintiff is barred by all affirmative defenses in Pa. R.C.P. 1030.

(Doc. 12, at 10-11).

Defendants now seek to specify their affirmative defenses by pointing to the specific ways they aver that Plaintiff was contributorily negligent. Defendants seek to include the following averments in their proposed amended answer:

20. Plaintiff violated numerous statutes of the Pennsylvania Motor Vehicle Code including, but not limited to, 75 Pa.C.S. §3303 and §3364.

21. Plaintiff's violations of 75 Pa.C.S. §3303 and §3364 constitute negligence per se.

22. Defendant was faced with a sudden emergency.

23. Defendant was faced with an unavoidable accident.

24. Plaintiff's violations of 75 Pa.C.S. §3303 and §3364 created a sudden emergency and unavoidable accident.

(Doc. 26-7, at 12).

Here, the Court finds that the addition of Defendants' proposed amendments would not cause undue delay or prejudice to Plaintiff, as it is most likely that the discovery needed to address the claims in the Complaint will overlap with the discovery needed to address the additional proposed affirmative defenses. *Handle*, 2017 WL 3473999, at *4 (finding that when discovery related to a plaintiff's claims and that needed to address a defendant's proposed amendments to an answer overlap, there is no undue delay, expense, or prejudice to plaintiff). Accordingly, Defendants' motion to file an amended answer is **GRANTED**.[2]

B.  MOTION FOR SUMMARY JUDGMENT

1.  **Sudden Emergency Doctrine**

Defendants move for summary judgment, submitting that there is no genuine issue of material fact as to whether Yenchick created a sudden emergency and unavoidable accident. (Doc. 31, at 6-7). Due to the sudden emergency, Defendants argue that Hasanli was not negligent because he played no part in creating the "perilous situation." (Doc. 31, at 10). Plaintiffs respond that there is a dispute of material fact as to whether a sudden emergency was the sole cause of the accident or whether Hasanli's own reckless driving contributed to the accident, thus removing him from the protection of the sudden emergency doctrine. (Doc. 35, at 4-8).

"The sudden emergency doctrine 'is available as a defense to a party who suddenly and unexpectedly finds him or herself confronted with a perilous situation which permits little

---

[2] Defendants proposed amended answer (Doc. 26-7) will be considered as a part of the record for the purposes of the instant summary judgment motion. (Doc. 27).

8

or no opportunity to apprehend the situation and act accordingly.'" *Price v. Kick*, No. 3:20-CV-62, 2022 WL 3701182, at *4 (W.D. Pa. Aug. 26, 2022) (quoting *Lockhart v. List*, 665 A.2d 1176, 1180 (Pa. 1995)). Pennsylvania courts acknowledge that the purpose of the defense is to require a lower standard of care from someone who is confronted with a sudden and unforeseeable occurrence than the law requires of someone. *Fakes v. Terry*, No. 2:15-CV-01574, 2018 WL 1382513, at *3 (W.D. Pa. Mar. 19, 2018). The doctrine may be raised by an "'individual, (1) who suddenly and unexpectedly finds himself confronted with a perilous situation, (2) that permits no opportunity to assess the danger, (3) if he responds appropriately, and (4) proves that he did not create the emergency. The Superior Court noted that these are issues generally resolved by jury.'" *Price*, 2022 WL 3701182, at *4 (quoting *Collins v. Tate*, No. 2:17-CV-00318-MJH, 2019 WL 3817570, at *4 (W.D. Pa. Aug. 14, 2019)); *see also Drew v. Work*, 95 A.3d 324, 334-35 (Pa. Super. Ct. 2014)). The defendant must prove that the sudden emergency was not caused by the defendant. *Price*, 2022 WL 3701182, at *5 ("If the defendant can prove the factual circumstances lend themselves to a sudden emergency, it must also be proven that the emergency was not caused by the defendant."). "A person cannot avail himself of the protection of the sudden emergency doctrine, however, 'if that person was himself driving carelessly or recklessly.'" *Broe v. Manns*, No. 3:15CV985, 2016 WL 5394394, at *3 (M.D. Pa. Sept. 27, 2016) (quoting *Lockhart*, 665 A.2d at 1180; *see also Chadwick v. Popadick*, 159 A.2d 907, 910 (Pa. 1960)). The issue of whether a sudden emergency existed during an automobile accident is a question for the jury. *Price*, 2022 WL 3701182, at *4 ("precedential case law [] often refers to the sudden emergency doctrine as instruction for the jury.") (citing *Sowizral v. Hughes*, 333 F.2d 829, 836 (3d Cir. 1964)). Whether a defendant has violated the assured clear distance rule, thus removing him from the protection of the sudden

9

emergency doctrine, is likewise typically a question of fact for a jury. *Mastalski v. GEICO Gen. Ins. Co.*, No. CV 20-1321, 2022 WL 17668801, at *3-4 (W.D. Pa. Dec. 14, 2022). However, "[t]he Pennsylvania Supreme Court has held that a violation of the assured clear distance ahead rule may be considered negligence as a matter of law when it is clearly established by the evidence." *Mastalski*, 2022 WL 17668801, at *4 (citing *Collins*, 2019 WL 3817570, at *3); *see also Springer v. Luptowski*, 635 A.2d 134, 136 (Pa. 1992); *Haines v. Dulaney*, 227 A.2d 625, 625-26 (Pa. 1967).

In the instant case, disputes of fact exist as to the second and third elements of the sudden emergency doctrine, whether Hasanli had an opportunity to assess the danger and if he responded appropriately. (Doc. 31, at 6-11; Doc. 35, at 4-9); *see Price*, 2022 WL 3701182, at *4. Because of the relatedness of these elements, the Court will consider them together. Plaintiffs assert, and the police report also concludes, that Hasanli was driving too fast and too close to Ms. Yenchick. (Doc. 27-8, at 6; Doc. 35, at 7). Plaintiffs suggest that had he been driving safely, he would have had an opportunity to assess the danger and react properly by braking. (Doc. 35, at 7). In support of their argument, Plaintiffs point to the aforementioned police report in which, "the Pennsylvania State Police noted violations of 75 Pa. C.S.A. § 3361 and 75 Pa. C.S.A. § 3310A – Following Too Closely by Mr. Hasanli in the crash report." (Doc. 27-8, at 6; Doc. 35, at 7). Hasanli disputes this conclusion and testified that he was not tailgating. (Doc. 27-8, at 7). His deposition is supported by expert testimony that concludes Hasanli was unable to stop due to Yenchick's deceleration, not due to recklessness such as a lapse in reaction time or tailgating. (Doc. 37-1, at 18-24). The conflicting testimony and evidence create a genuine issue of material fact regarding Hasanli's opportunity to respond and the appropriateness of his reaction. *Cf. Broe*, 2016 WL 5394394 (granting summary

10

judgment to a plaintiff in a personal injury matter arising from an automobile accident when a police report cited defendant for driving too fast for conditions and defendant admitted as much in his testimony and stating "based on defendant's citation for violating Pennsylvania's Motor Vehicle Code and his admissions described above, the undisputed evidence demonstrates that defendant drove, at the very least, carelessly.").

The record also contains a disputed issue of fact as to whether Hasanli could have been reasonably expected to foresee the need to slow down. Although Hasanli submits that he could not have been reasonably expected to foresee that need, because neither of the two vehicles merging into the right lane had turn signals on (Doc. 31, at 10), the video evidence contradicts this assertion, where the turn signals are visibly blinking before the accident. (Doc. 27-10). A reasonable juror could conclude that Hasanli was aware of Yenchick's need to slow down and that her braking was foreseeable, not a sudden emergency. The parties also do not cite any evidence regarding the time it would take Hasanli to stop at his speed of 55 miles per hour or about the distance Hasanli was from Yenchick when she began to brake. *Mastalski*, 2022 WL 17668801, at *4 (denying summary judgment because the sudden emergency doctrine cannot be employed when "there is no record evidence to establish the time it would have taken [a party] to stop her vehicle, nor is there record evidence of the distance between vehicles involved here").

As to the fourth element, whether Hasanli contributed to the emergency or caused the emergency, the Court finds a dispute of fact exists which renders summary judgment inappropriate. If a jury were to conclude that Hasanli contributed to the emergency, the sudden emergency doctrine inaccessible to Hasanli as a defense. *Sowizral*, 333 F.2d at 836. The parties dispute whether Hasanli violated the assured clear distance ahead rule. (Doc. 27-

8, at 6; Doc. 35, at 7; Doc. 37, at 4). Plaintiffs allege that Hasanli was tailgating, and according to the police report, Hasanli was too close to Yenchick for the speed at which he was driving. (Doc. 27-8, at 6; Doc. 35, at 7). Again, Hasanli has testified that he was not tailgating. (Doc. 27-8, at 7). Further, Defendants' expert opines that Hasanli was unable to stop due to Yenchick's deceleration, not due to Hasanli's inappropriate reaction or negligence. (Doc. 37-1, at 18-24). Pennsylvania courts have found negligence as a matter of law and declined to apply the sudden emergency defense when the driver of a vehicle that rear-ended another vehicle violated assured the clear distance ahead rule. *See Springer*, 635 A.2d at 136 (finding a violation of the assured clear distance ahead rule based on conclusive expert testimony that a driver would have been unable to stop); *see also Haines*, 227 A.2d at 625-26 (finding that a driver violated the clear distance ahead rule when she was driving at a speed that would have required 77 feet to stop, but she was only 30 feet away from the vehicle in front of her and holding that the assured clear distance ahead rule applies regardless of a sudden emergency). When there is not conclusive evidence regarding the assured clear distance ahead rule, courts have denied summary judgment. *See Collins*, 2019 WL 3817570, at *4-5 (rejecting summary judgment when there are questions of fact regarding the reasonableness of a party's driving and no conclusive evidence regarding whether a driver would have been able to stop in time). As discussed *supra*, the record is in dispute about the distance Hasanli was from Yenchick when she began to brake, and about how long it would have taken Hasanli to slow down at his speed.

    Because the record contains disputes of material fact about whether there was a sudden emergency and the cause of it, such as whether Hasanli was driving reasonably and including

whether he violated the assured clear distance ahead rule, Defendants' motion for summary judgment will be **DENIED** on this basis.

### 2. GTC Logistics Liability

Defendants also seek summary judgment on Plaintiffs' claims for vicarious liability, negligent/reckless hiring/supervision/retention and negligent entrustment against GTC Logistics. (Doc. 31, at 11). As Defendants correctly point out, each of these claims require a finding that the employee was negligent. As such, Defendants rely primarily on their averment that Hasanli was not negligent due to their contention that the sudden emergency doctrine applies in arguing for summary judgment on the claims against GTC Logistics. Defendants next contend in a cursory manner that such claims fail regardless because "Hasanli was a professional truck driver with a CDL. He was licensed and went through GTC's training and orientation programs. He was familiar with and followed all FMCSA regulations. This is all undisputed." (Doc. 31, at 12-13). Plaintiffs dispute this conclusion, specifically arguing that Hasanli was unfit because he "had a prior license suspension and motor vehicle accident involving injury and property damage in 2019." (Doc. 35, at 10).

The relevant law governing the claim of negligent entrustment comes from the Restatement (Second) of Torts. Per the Restatement:

> "[i]t is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others."

Restatement (Second) of Torts § 308 (1965).

A plaintiff must show that GTC Logistics (1) permitted a Hasanli, (2) to use a thing under the control of GTC Logistics, and (3) that the GTC logistics knew or should have known that

Hasanli intended to or was likely to use the thing in such a way that would harm another. *Ferry v. Fisher*, 709 A.2d 399, 403 (Pa. Super. Ct. 1998). As Plaintiffs note, "'[i]t has long been the law in this Commonwealth that an employer may be liable in negligence if it knew or should have known that an employee was dangerous, careless or incompetent and such employment might create a situation where the employee's conduct would harm a third person.'" (Doc. 35, at 10) (quoting *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 39-40 (Pa. Super. Ct. 2000)).

Here, there is a genuine issue of material fact in dispute as to whether GTC Logistics should have known that Hasanli's "employment might create a situation where the employee's conduct would harm a third person." *See Brezenski*, 755 A.2d at 39-40. First, evidence in the record indicates that Hasanli had his driver's license suspended in 2019 and also had been involved in an accident which caused damage to both another individual and property. (Doc. 35, at 91, 105). There is some dispute about the degree to which GTC Logistics was aware of these issues. Hasanli left the driver's history blank on his application. (Doc. 25, at 91). GTC Logistics Safety Manager, Sam Bolot testified that Hasanli had told the individual who hired Hasanli about his prior automobile accident and license suspension. (Doc. 35, at 105). Because of Mr. Bolot's testimony that GTC Logistics' personnel knew about prior driving incidents involving Hasanli, there is a question of fact as to whether GTC Logistics was negligent in its hiring and entrustment of Hasanli. (Doc. 35, at 105); *see Adames v. May Furniture, Inc.*, No. 1:17-CV-00652, 2019 WL 8937042, at *15 (M.D. Pa. Nov. 26, 2019) (denying defendants' motion for summary judgment when there was conflicting evidence about whether an employer was aware of an employee's poor driving record and stating "[r]ecognizing that these factual discrepancies constitute much of the basis for the

14

plaintiffs' negligence claims against these defendants, it simply is not our position to weigh evidence or assess credibility when considering a motion for summary judgment."). Accordingly, Defendants' motion for summary judgment on the claims against GTC Logistics will be **DENIED**.

### 3. Loss of Consortium

Finally, Defendants argue that Mr. Elliot's loss of consortium claim fails as a matter of law because Hasanli was not negligent. (Doc. 31, at 13). Plaintiffs refute this conclusion, contending that "genuine issues of material fact surrounding the March 5, 2022 crash" and Hasanli's negligence that make summary judgment inappropriate. (Doc. 35, at 11-12).

A loss of consortium claim is a derivative claim, meaning its validity is based upon the availability of recovery for another claim. *See Kline v. Zimmer Holdings, Inc.*, 662 F. App'x 121, 121 n.1 (3d Cir. 2016) (dismissing a loss of consortium claim without a separate analysis when all other claims failed because a loss of consortium claim is derivative). Typically, a loss of consortium claim must attach to a valid tort claim. *See Harris v. Oz Directional Drilling, Inc.*, No. 3:13-CV-2580, 2016 WL 4578150, at *5 (M.D. Pa. June 30, 2016), *report and recommendation adopted*, No. 3:13-CV-2580, 2016 WL 4698635 (M.D. Pa. July 19, 2016) ("it is well-settled that: '[a] spouse's consortium claim derives only from the injured spouse's right to recover [under state law] in tort.'") (quoting *Quitmeyer v. Se. Pennsylvania Transp. Auth. ("SEPTA")*, 740 F. Supp. 363, 370 (E.D. Pa. 1990)); *see also Thomas v. Shutika*, No. 4:12-CV-692, 2012 WL 4050005, at *3 (M.D. Pa. Aug. 24, 2012), *report and recommendation adopted*, No. 4:12-CV-692, 2012 WL 4050021 (M.D. Pa. Sept. 13, 2012) ("The defendants' praecipe [sic] to withdraw this motion to dismiss correctly acknowledges the viability of this derivative state law tort loss of consortium claim in this case").

Here, the loss of consortium claim survives, as the negligence tort claims from which it derives survive. *See Hlad v. Hirsch*, No. 3:23-CV-00785, 2024 WL 1197516, at *7 (M.D. Pa. Mar. 20, 2024) ("As the Court finds that [the] negligence claim shall proceed, [the] derivative claim for loss of consortium also survives") (citing *Patchcoski v. W.L. Gore & Assocs., Inc.*, No. CV 3:19-1556, 2020 WL 4335016, at *13 (M.D. Pa. July 28, 2020). Accordingly, because the Court will deny Defendants' motion for summary judgment on the tort claims, Defendants' motion for summary judgment on the loss of consortium claim is likewise **DENIED**. *See Murray v. Com. Union Ins. Co.*, 782 F.2d 432, 438 (3d Cir. 1986) (one cannot recover for loss of consortium in absence of defendant's liability to spouse) (citing *Little v. Jarvis*, 280 A.2d 617, 620 (Pa. Super. Ct. 1971))

IV. **CONCLUSION**

Based on the foregoing, Defendants' motion for leave to file an amended answer (Doc. 26) is **GRANTED.** Defendants' motion for summary judgment is **DENIED.** (Doc. 27).

An appropriate Order follows.

Dated: January 21, 2025

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**